1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**
**AT YAKIMA**

| | |
|---|---|
| DONALD RAY MCKINLEY, by and through his personal representative ADRIENNE J. MCKINLEY,<br><br>      Plaintiff,<br><br>v.<br><br>BECTON DICKINSON AND COMPANY, a New Jersey Corporation, BARD ACCESS SYSTEMS, INC., a Utah Corporation, and C.R. BARD INC., a New Jersey Corporation,<br><br>      Defendants. | **COMPLAINT**<br><br>**JURY DEMAND** |

COMES NOW, Plaintiff Donald Ray McKinley, by and through his representative Adrienne J. McKinley, by and through counsel, for his Complaint against Bard Access Systems, Inc., Becton, Dickinson and Company, and C.R. Bard (collectively, "Defendants"), states as follows:

1.   This is an action for damages relating to Defendants' design, development, testing, assembling, manufacturing, packaging, promoting, marketing, distribution, supplying, and/or selling the defective device sold under

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

1    the trade name of Bard MRI Implantable Port Powerport isp (hereinafter

2    "PowerPort" or "Defective Device").

3        2.    Plaintiff Donald Ray McKinley (hereinafter "Plaintiff") is an adult

4    resident and citizen Yakima, WA, who, upon information and belief, is disabled as

5    a result of the PowerPort's migration up to his left jugular vein while being

6    implanted in Plaintiff's body and the resulting Acute Embolism and Thrombosis.

7    Upon information and belief, Plaintiff lives with and is being completely taken

8    care of his wife, as outlined in the paragraph below.

9        3.    Plaintiff's personal representative Adrienne J, McKinley is the wife,

10    caretaker, and a court-appointed Power of Attorney for Plaintiff; she is an adult

11    resident and citizen of Yakima, Washington, which is located in the Eastern

12    District of Washington.

13        4.    Defendant Becton Dickinson and Company ("BD") is a New Jersey

14    Corporation with its principal place of business located at 1 Becton Drive, in

15    Franklin Lakes, New Jersey. BD is engaged in the business of researching,

16    developing, designing, licensing, manufacturing, distributing, supplying, selling,

17    marketing, and introducing into interstate commerce its medical devices, including

18    the PowerPort.  BD is the parent company of Defendants BAS and C.R. Bard, Inc.

19        5.    Defendant Bard Access Systems, Inc. ("BAS") is a Utah corporation,

20    with its principal place of business located in Salt Lake City, Utah, BAS conducts

21    business throughout the Unites States, including the State of Washington, and is a

22    wholly owned subsidiary of Defendant Becton, Dickinson and Company

23    (hereinafter "BD"). BAS is engaged in the business of researching, developing,

24    designing, licensing, manufacturing, distributing, supplying, selling, marketing,

25

**MALONEY O'LAUGHLIN, PLLC**
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

and introducing into interstate commerce, either directly or indirectly, through third parties or related entities, its medical devices, including the PowerPort.

6.    Defendant C.R. Bard, Inc. ("Bard") is a New Jersey corporation, with its principal place of business located in Murray Hill, New Jersey. Bard is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its medical devices, including the PowerPort.

7.    BD is the nominal corporate parent of BAS and Bard, but the latter two are alter egos of BD in that BD exercises complete domination and control over BAS and Bard, having completely integrated BAS' and Bard's assets, liabilities, and operations into its own such that BAS and Bard have ceased to function as separate corporate entities.

8.    BD's control over BAS and Bards has been purposefully used to perpetrate the violation of various legal duties in contravention of Plaintiff's legal rights.

9.    The breaches by BD of various legal duties as described in the main body of this Complaint are the proximate cause of the injuries and damages described herein.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. §1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and cost.

11.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 by virtue

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

of the facts that (a) a substantial part of the events or omissions giving rise to the claims occurred in this District and (b) Defendants' products are produced, sold to, and consumed by/implanted in individuals in the State of Washington, thereby subjecting Defendants to personal jurisdiction in this action and making them all "residents" of this judicial District.

12.    Defendants have and continue to conduct substantial business in the State of Washington and in this District, distribute vascular access products in this District, receive substantial compensation and profits from sales of vascular access products in this District, and made material omissions and misrepresentations and breaches of warranties in this District, so as to subject them to *in personam* jurisdiction in this District.

13.    Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over Defendants, because Defendants are present in the State of Washington, such that requiring an appearance does not offend traditional notices of fair and substantial justice.

## PRODUCT BACKGROUND

14.    Bard MRI Implantable Port Powerport isp ("PowerPort", "Defective Device", or "Device") is one of several varieties of port/catheter systems that has been designed, manufactured, marketed, and sold by Defendants.

15.    According to Defendants, the PowerPort is a totally implantable vascular access device designed to provide repeated access to the vascular system for the delivery of medication(s), intravenous fluids, parenteral nutrition solutions, and blood products.

COMPLAINT   -4-

16.     The intended purpose of the PowerPort is to make it easier to deliver medications, etc. directly into the patient's bloodstream. The device is surgically placed completely under the skin and left implanted for an extended period of time which can last many months.

17.     The PowerPort consists of two primary components: an injection port and a catheter. The injection port has a raised center, or "septum," where the needle is inserted for delivery of the medication, etc., The medication is carried from the port into the bloodstream through a small, flexible tube, called a catheter, which is inserted into a blood vessel.

18.     The PowerPort is "indicated for patient therapies requiring repeated access to the vascular system. The port system can be used for infusion of medications, I.V. fluids, parenteral nutrition solutions, blood products, and for the withdrawal of blood samples." *See PowerPort, Implantable Port, Instructions For Use's Indications for Use*, at 1.

19.     According to Defendants' marketing materials, the polyurethane catheter "has less propensity for surface biodegradation, making it more resistant to environmental stress cracking.

20.     The catheter is comprised of a polymeric mixture of polyurethane and barium sulfate, a compound which is visible in certain radiologic studies.

21.     Barium sulfate is known to contribute to reduction of the mechanical integrity of polyurethane *in vivo* as the particles of barium sulfate dissociate from the surface of the catheter over time, leaving microfractures and other alterations of the polymeric structure and degrading/eroding the mechanical properties of the catheter.

COMPLAINT   -5-

22.    Researchers have shown that catheter's surface degradation in products featuring a radiopaque barium sulfate stripe is concentrated at the locus of the stripe. *See* Hecker JF, Scandrett LA, *Roughness and thrombogenicity of the outer surfaces of intravascular catheter*s. *J Biomed Mater Res*. 1985;19(4):381-95. doi:10.1002/jbm.820190404.

23.    The mechanical integrity of barium sulfate-impregnated polyurethane catheter is affected by the concentration of barium sulfate as well as the homogeneity of the modified polymer.

24.    As the barium sulfate content increases, medical polymer products that use barium sulfate begin to show losses of the base polymer's tensile strength and other mechanical properties *See generally*, Tilak M. Shah, *Radiopaque Polymer Formulations for Medical Device*, March 1, 2000, Medical Device and Diagnostic Industry, available online at https://www.mddionline.com/print/60.

25.    Upon information and belief, Defendants' manufacturing process in constructing the catheter implanted in Plaintiff involved too high a concentration of barium sulfate particles, leading to improperly high viscosity of the raw polyurethan before polymerization and causing improper mixing of barium sulfate particles within the polyurethane matrix.

26.    This defect in the manufacturing process led to a heterogeneous modified polymer which included weakened areas of higher barium sulfate concentration and led to surface degradation/erosion which, in turn, created multiple locations for the development of thrombotic material.

27.    Although the surface degradation/erosion and mechanical failure can be reduced or avoided with design modifications known to Defendants to

COMPLAINT   -6-

encapsulate the radiopaque compound or by using a different polymer formulation, Defendants elected not to incorporate those design elements into the PowerPort.

28.    Defendants obtained "clearance" to market the PowerPort product implanted in Plaintiff under Section 510(k) of the Medical Device Amendments to the Food, Drug, and Cosmetic Act.

29.    Unlike the rigorous pre-market approval requirements under the FDA, §510(k) permits the marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of the device. Section 510(k) reviews are completed in an average of 20 hours as compared to the 1200 hours necessary to complete a PMA review, and rarely elicit negative responses from the FDA. *See generally, Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477-479 (1996). The "510k process," is "focused on equivalence, not safety."    *See id*., at 493, citing *Lohr v. Medtronic, Inc.*, 56 F3d 1335, 1348 (1995).

30.    Pursuant to *Wyeth v. Levine*, 555 U.S. 555 (2009), once a product is cleared "the manufacturer remains under an obligation to investigate and report any adverse associated with the drug…and must periodically submit any new information that may affect the FDA's previous conclusions about the safety, effectiveness, or labeling …." This obligation extends to post-market monitoring of adverse events/complaints.

31.    At all times relevant to this action, Defendants misrepresented the safety of the PowerPort system, and negligently designed, manufactured, prepared, compounded, assembled, processed, labeled, marketed, distributed, and sold the PowerPort system as a safe and effective device to be surgically implanted to

COMPLAINT   -7-

provide repeated access to the vascular system for the delivery of medications, intravenous fluids, parenteral nutrition solutions, and blood products.

32.    At all times relevant hereto, Defendants knew, and had reason to know, that the PowerPort was not safe for the patients for whom they were prescribed and implanted, because once implanted, the device was prone to eroding, fracturing, migrating, perforating internal vasculature, precipitating acute embolism and thrombosis, and otherwise malfunctioning.

33.    At all times relevant to this action, Defendants knew and had reason to know that patients implanted with a PowerPort had an increased risk of suffering life threatening injuries, including but not limited to: death, hemorrhage, cardiac/pericardial tamponade (pressure caused by a collection of blood in the area around the heart), cardiac arrhythmia and other symptoms similar to myocardial infarction, severe and persistent pain, acute embolism and thrombosis, serious infections, and perforations of tissue, vessels and organs, and/or the need for additional surgeries to remove the defective device.

34.    Soon after the PowerPort was introduced to the market, which was years before Plaintiff's PowerPort device was implanted, Defendants received large numbers of Adverse Event Reports (AERs) from healthcare providers, reporting that the PowerPort was eroding, fracturing, migrating, and otherwise malfunctioning post-implantation, and that eroded or fractured pieces were traveling inside patient's bodies.

35.    Defendants also received large numbers of AERs reporting that PowerPort was found to have perforated internal vasculature. These failures were often associated with reports of patient injuries such as:

COMPLAINT   -8-

     a.  Hemorrhage;

     b.  Cardiac/pericardial tamponade;

     c.  Cardiac arrhythmias and other symptoms similar to myocardial infarction;

     d.  Severe and persistent pain or infections;

     e.  perforations of tissue, vessels and organs; and

     f.  death.

36.    In addition to the large number of AERs which were known to Defendants, there are thousands of recorded device failures and/or injuries related to the Defendants' implantable PowerPort devices– including the device implanted in Plaintiff – which were concealed from medical professionals and patients.

37.    Defendants were aware or should have been aware that the PowerPort had a substantially higher failure rate than other similar products on the market, yet Defendants failed to warn healthcare providers, and through healthcare providers, Defendants failed to warn the members of general public, like Plaintiff in this action of this fact.

38.    After becoming aware of the adverse outcomes in patients associated directly to the PowerPort device, Defendants did not warn treating physicians, other healthcare providers, and patients about the risk of eroding, fracturing, and migration of dislodged portions of the PowerPort devices.

39.    Defendants also intentionally concealed the severity of complications caused by the PowerPort and the likelihood of these events occurring.

40.    Rather than alter the design and the manufacturing process of the PowerPort to make it safer or adequately warn health care providers, including

COMPLAINT  -9-

physicians, of the dangers associated with the PowerPort, Defendants continued to actively and aggressively market the PowerPort as safe, despite their knowledge of numerous reports of catheter erosions, fractures, and associated injuries.

41.    Moreover, Defendants' warnings suggested that erosion or fracture of the device could only occur if the physician incorrectly placed the device such that "compression or pinch-off" was allowed to occur.

42.    However, Defendants knew internally these devices were eroding, fracturing, and causing serious injuries due to defects in the design and composition, manufacturing and lack of adequate warnings.

43.    The conduct of Defendants, as alleged in this Complaint, constitutes willful, wanton, gross, and outrageous corporate conduct that demonstrates a conscious disregard for the safety of Plaintiff.

44.    Defendants had actual knowledge of the dangers presented by the PowerPort System, yet consciously failed to act reasonably to:

      a.  Adequately Inform or warn Plaintiff, his prescribing physicians, or the public at large of these dangers, including the development of acute embolism and thrombosis in an internal jugular vein;

      b.  Establish and maintain an adequate quality and post-market surveillance system;

      c.  Establish and maintain an adequate quality control procedure in the PowerPort manufacturing process;

      d.  Establish and maintain an adequate quality and post-market quality control system to ensure the design, manufacturing and labeling

COMPLAINT  -10-

1    deficiencies associated with the device were timely identified and

2    corrected; and

3    e. Recall the PowerPort system from the market.

4    45.    Despite knowing of a design and manufacturing defect in the

5    PowerPort device, which created excessive risk in patients, Defendants did not

6    change the design or manufacture of the device. Despite being aware of the

7    significant failures of the PowerPort device through the AER reports, Defendants

8    took no action to warn medical providers or consumers of the known flaws in the

9    PowerPort device.

10    46.    Rather, Defendants' Warnings suggested that erosion or fracture may

11    occur only if the physician incorrectly implanted the device in a manner that cause

12    it to compress or "pinch off." At no time did Defendants disclose, even though

13    they were aware, that such eroding or fracturing had already occurred in the

14    absence of physician's error.

15    47.    There are thousands of recorded device failures and/or injuries related

16    to the Defendants' implantable PowerPort products, including the device implanted

17    in Plaintiff, which were concealed from health care professionals and patients

18    through submission to the controversial Alternative Summary Reporting ("ASR")

19    program.

20    48.    The Defendants improperly hid the device failures in the ASR

21    program when the reports should have been made through the publicly searchable

22    MAUDE database.

23

24

25

COMPLAINT   -11-

49.     Defendants were aware or should have been aware that the PowerPort had a substantially higher failure rate than other similar products on the market, yet the Defendants failed to warn consumers of this fact.

50.     Defendants were aware of design defects of the PowerPort device and took intentional actions to conceal the design defects from the FDA, health care providers, and consumers.

51.     Defendants were also aware of manufacturing defects of the PowerPort device and took intentional actions to conceal the design defects from the FDA, health care providers, and consumers.

52.     Despite being aware of defects in the PowerPort devices manufactured by Defendants, Defendants intentionally concealed the severity of complications caused by PowerPort and the likelihood of these events occurring from the FDA, health care providers, and consumers.

## SPECIFIC FACTUAL ALLEGATIONS AS TO PLAINTIFF

53.     A Bard MRI Implantable Port Powerport isp was surgically placed in Plaintiff on May 4th, 2017 when Plaintiff was in chemotherapy  for his Stage III colon cancer. The installed PowerPort was manufactured by BAS. It is identified as REF Number 1808060, with Lot Number REAY1833.

54.     The device was implanted by Plaintiff's surgeon, Dr. Katie Fritz at Portneuf Medical Center in Pocatello, Idaho.

55.     The PowerPort was correctly and properly installed by Dr. Fritz, in accordance with the manufacturer's instructions.

56.     The PowerPort device installed in Plaintiff was not installed in such a manner that would have caused it to compress, erode or "pinch off."

COMPLAINT  -12-

57.     The PowerPort was properly utilized by Plaintiff's treating physicians for treatment, strictly in accordance with the manufacturer's instructions.

58.     At all times relevant to this action, the PowerPort was used for its intended purpose of injecting medications into (or withdrawing blood from) Plaintiff; all medical personnel who provided treatment to Plaintiff properly followed the instructions for use of the PowerPort, including the requirement for use of certain sized needles.

59.     Plaintiff and his health care providers used the PowerPort in a normal, customary, intended, and foreseeable manner, namely as a surgically placed device used to make it easier to deliver medications, etc., into Plaintiff's bloodstream. Moreover, Plaintiff's health care providers did not place, maintain, or use the device incorrectly such that it caused the device to malfunction.

60.     On June 6, 2017, Plaintiff began to develop pain from swelling in his neck due to what was diagnosed as a left internal jugular thrombophlebitis secondary to a displaced port-a-cath. This was confirmed through a CT Scan that was performed at Portneuf Medical Center. An additional CT Scan was taken and showed that Plaintiff's catheter had migrated from the superior vena cava to the left internal jugular vein.

61.     On June 24, 2017, Plaintiff was still present at Portneuf Medical Center in Pocatella, Idaho due to extreme swelling and pain in his neck with direct relation to the catheter. Plaintiff was required to undergo surgery to remove the PowerPort.

62.     Due to the defective device, Plaintiff suffered damages and continues to suffer damages including, but not limited to, undergoing an unnecessary major

COMPLAINT   -13-

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

surgery, increased risk of future severe and permanent injuries, including permanent brain damage that requires long term care, severe emotional distress, ongoing fear and anxiety from future injuries, including but not limited to, acute embolism and thrombosis.

63.    Defendants, directly or through their agents, apparent agents, and employees, designed, manufactured, marketed advertised, distributed, and sold the PowerPort that was implanted in Plaintiff.

64.    The Defendants intentionally and knowingly concealed their knowledge of the propensity of the PowerPort catheter to erode or fracture from Plaintiff and his physicians.

65.    Defendants intentionally and knowingly concealed the dangerous propensity of the PowerPort device to erode, fracture, and migrate, necessitating surgical intervention. Defendants further intentionally concealed their knowledge of the cause of these failures, and that the failures were known to cause serious injuries.

66.    The Defendants knowingly and intentionally concealed their knowledge of the PowerPort's faulty design and manufacturing, and the unreasonably dangerous risks associated with the faulty device from Plaintiff, his physicians, and the FDA.

67.    Numerous reports of PowerPort catheter erosions, fractures, dislodgment, and/or thrombosis in the absence of physician error were recorded and reported prior to prior to the implantation of the PowerPort in Plaintiff.

68.    Despite knowledge of numerous reports of catheter failure. Defendants continued to actively and aggressively market the PowerPort as safe.

COMPLAINT   -14-

Defendants utilized marketing communications, including the Instruction For Use, and direct communications from sales representatives to Plaintiff's health care providers to intentionally mislead his health care providers into believing the known erosions or fractures were caused only by physician error, and no eroding or fracturing occurred due to the chemical makeup of the catheter itself, despite knowing this to be exactly the case.

69.    Defendants did not adequately warn Plaintiff or Plaintiff's physicians of the true quantitative or qualitative risk of catheter failure associated with the PowerPort.

70.    Rather than correct the faulty design, composition, and manufacture of the PowerPort product to make it safer or warn physicians of the known dangers associated with the PowerPort, the Defendants knowingly and intentionally chose to continue with their sales and marketing efforts to sell their knowingly defective product to health care providers and patients such as Plaintiff.

71.    Plaintiff's healthcare providers did in fact review the product insert Defendants distributed with the PowerPort prior to prescribing the device to and implanting the device in Plaintiff.

72.    Plaintiff's physicians relied upon the representations, including the Instructions For Use distributed with the PowerPort implanted in Plaintiff and the device advertising, to Plaintiff's detriment.

73.    The Defendants knowingly concealed the dangerous propensity of the device to erode, fracture, or dislodge and create a life-threatening medical condition, such as happened to Plaintiff.

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

74.     As a result of the intentional actions of the Defendants (including their failures to notify the FDA, the medical profession and consumers), and the Defendants' wrongful conduct in designing, manufacturing, and marketing a known defective product, Plaintiff and Plaintiff's physician were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff would have been exposed to risks identified in this Complaint, and that those risks were the direct and proximate result of the Defendants' acts, omissions and intentionally and knowingly-made misrepresentations.

75.     The Defendants failed to notify the FDA, the medical community, and consumers of the known defects in the PowerPort device, and knowingly and intentionally withheld information about the known defects of the device, which were known to Defendants prior to the manufacture of the device that was implanted in Plaintiff.

76.     The Defendants failed to conduct adequate and sufficient post-marketing surveillance after they began marketing, advertising, distributing and selling the PowerPort.

77.     Due directly to the defective PowerPort, Plaintiff suffered damages and continues to suffer damages including, but not limited to, undergoing multiple surgeries, medical and hospital expenses, increased risk of future severe and permanent injuries, severe emotional distress, physical impairment, lost wages, ongoing fear of and anxiety from future injuries, including but not limited to cardiac injuries. Accordingly, Plaintiff seeks compensatory damages.

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

1

## **COUNT I – NEGLIGENCE**

2       78.     Plaintiff incorporates the preceding paragraphs as if set out forth

3  herein.

4       79.     Plaintiff brings this Count against Defendants BAS, BD, and Bard.

5       80.     Defendants owed Plaintiff a duty to exercise reasonable care when

6  designing, manufacturing, marketing, advertising, distributing, selling, and

7  conducting post-market surveillance of the PowerPort.

8       81.     The Defendants failed to exercise due care under the circumstances

9  and therefore breached this duty by:

10              a.   Failing to properly and thoroughly test the PowerPort before

11                   releasing the device to market, and/or failing to implement feasible

12                   safety improvements;

13              b.   Failing to properly and thoroughly analyze the data resulting from

14                   any pre-market testing of the PowerPort;

15              c.   Failing to conduct sufficient post-market testing and surveillance

16                   of the PowerPort;

17              d.   Designing, manufacturing, marketing, advertising, distributing, and

18                   selling the PowerPort to consumers, including Plaintiff, without an

19                   adequate warning of the significant and dangerous risks of the

20                   PowerPort and without proper instructions to avoid the harm which

21                   could foreseeably occur as a result of using the device;

22              e.   Failing to exercise due care when advertising and promoting the

23                   PowerPort; and

24

25

COMPLAINT   -17-                          **MALONEY O'LAUGHLIN, PLLC**
                                          200 WEST MERCER ST., STE. 506
                                          SEATTLE, WA 98119
                                          206.513.7485

f.   Negligently continuing to manufacture, market, advertise, and distribute the PowerPort after Defendants knew or should have known of its adverse effects.

82.   As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

83.   In performing the foregoing acts, omissions, and misrepresentations, Defendants acted grossly negligent, fraudulently, and with malice so as to justify an award of punitive and/or exemplary damages.

## COUNT II – VIOLATION OF THE WASHINGTON PRODUCT LIABILITY ACT (WPLA)-PRODUCT LIABILITY CLAIM UNDER RCW 7.72.010(4)

84.   Plaintiff incorporates the preceding paragraphs as if set out fully herein.

85.   Plaintiff brings this count against Defendants BAS, BD, and Bard.

86.   Under WPLA, Defendants are the manufacturers of the device implanted in Plaintiff, as they designed, produced, made, fabricated, and constructed the device implanted in Plaintiff or component part of the device implanted in Plaintiff before its sale to Plaintiff.  *See RCW* 7.72.010(2).  Moreover, Defendants also hold themselves out as a manufacturers. *See id.*

COMPLAINT   -18-

87.    Under WPLA, Plaintiff brings this Product Liability Claim against all Defendants to include "any claim or action brought for harm, caused by manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product."  *See RCW* 7.72.010(4).

88.    Under WPLA, Defendants, as product manufacturers, are subject to liability to Plaintiff because Plaintiff's harm was proximately caused by the negligence of Defendants, i.e., the manufacturers in that the device implanted in Plaintiff was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided.  *See RCW* 7.72.030(1).

89.    Under WPLA, the device implanted in Plaintiff was not reasonably safe as designed because at the time of the manufacture, the likelihood that the device would cause the Plaintiff's harm or similar harms, and the "seriousness of those harms, outweighed the burden on [Defendants, i.e., the manufacturers] to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product."  *See generally id*., at 7.72.030(a).  The device implanted in Plaintiff was unsafe to an extent beyond that which would be contemplated by an ordinary consumer, like Plaintiff in this case.  *See Falk v. Keene Corp*., 113 Wn.2d 645 (1989); RCW 7.72.030(3).  An ordinary consumer would not be able to contemplate that lack of safety in the context of the development of acute embolism and thrombosis of an internal jugular vein, like Plaintiff in this case.

90.    The PowerPort implanted in Plaintiff was not reasonably safe for its intended use and was defectively designed.

COMPLAINT   -19-

**MALONEY O'LAUGHLIN, PLLC**
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

91.     The PowerPort was in a defective condition at the time it left the possession or control of Defendants, and thus it was unreasonably dangerous to the users, including Plaintiff.

92.     The PowerPort reached Plaintiff without substantial change in its condition.

93.     Plaintiff's injuries, damages, and losses were sustained as a direct and proximate result of the PowerPort's design defects.

94.     Under WPLA, the device implanted in Plaintiff was not reasonably safe because adequate warnings or instructions were not provided with the device; at the time of manufacture of the device implanted in Plaintiff, "the likelihood that the [said device] would cause the [Plaintiff's] harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of [Defendants, i.e., the manufacturers] inadequate and [Defendants, i.e., the manufacturers] could have provided the warnings or instructions which [Plaintiff] alleges would have been adequate." *See generally id*., at 7.72.030(b).  Defendants failed to warn the health care providers and consumers, including Plaintiff, about the real risk associated with fracturing the PowerPort while the device being implanted: Defendants failed to indicate that the fractured pieces of the catheter will likely migrate within the person's body, i.e., towards one's heart or within one's internal jugular vein.

95.     The device implanted in Plaintiff was not reasonably safe because "adequate warnings or instructions were not provided after the [device] was manufactured where [Defendants, i.e., the manufacturers] learned or where a reasonably prudent manufacturer should have learned about a danger connected

COMPLAINT   -20-

1    with the [said device] after it was manufactured." *See generally id*., at 7.72.030
2    (c).

3    96.    Under WPLA, Defendants breached their individual and collective
4    duty to "act with regard to issuing warnings or instructions concerning the danger
5    [connected with the device implanted in Plaintiff] in the manner that a reasonably
6    prudent manufacturer would act in the same or similar circumstances." *See*
7    *generally id*.   In this case, a reasonably prudent manufacturer would establish a
8    Warning category "Fracturing and Migrating" to duly reflect upon the high
9    likelihood of the device to fracture while being implanted in the user's body with
10   the fractured pieces then migrating within the user's body creating a life-
11   threatening situation.

12   97.    Under WPLA, Defendants, as the manufacturers of the device
13   implanted in Plaintiff, are subject to strict liability to Plaintiff because Plaintiff's
14   harm was "proximately caused by the fact that the [device implanted in Plaintiff]
15   was not reasonably safe in construction or not reasonably safe because it did not
16   conform to the [Defendants', i.e., the manufacturers'] express warranty or to the
17   implied warranties under *Title* 62A *RCW*." *See generally id*., at 7.72.030(2).

18   98.    Under WPLA, the device implanted in Plaintiff was not reasonably
19   safe in construction because when the said device left the control of Defendants,
20   i.e., the manufacturers, the said device "deviated in some material way from the
21   design specifications or performance standards of [Defendants, i.e., the
22   manufacturers], or deviated in some material from otherwise identical units of the
23   same product line." *See id*., at 7.72.030(2)(a).

24

25

COMPLAINT   -21-                                   **MALONEY O'LAUGHLIN, PLLC**
                                                   200 WEST MERCER ST., STE. 506
                                                   SEATTLE, WA 98119
                                                   206.513.7485

99.    Under WPLA, the device implanted in Plaintiff, did not conform to the express warranty of the manufacturer because it was made "part of the basis of the bargain and relate[d] to a material fact or facts concerning the [device] and the express warranty proved to be untrue." *See generally id*., at 7.72.030(2)(b). Defendants in this action expressly warranted Plaintiff and his health care providers that the device implanted in Plaintiff was safe and fit for use by consumers, like Plaintiff, was of merchantable quality, did not produce unreasonable side effects, etc., which proved to be untrue as clarified in this Complaint. *See generally id*.

100.    Plaintiff purchased or otherwise acquired the device implanted in him, and a product in question was not reasonably safe as designed, and it was not reasonably safe due the lack of adequate warnings or instructions, in addition Defendants, i.e., the manufacturers, subjected themselves to strict liability, as shown above, because the device was not reasonably safe in construction or not reasonably safe because it did not conform to the manufacturer's express warranty and/or to the implied warranty, and as a result of Defendants', i.e., the manufacturers' violation of WPLA, Plaintiff suffered harms and damages described in this Complaint.

## **COUNT III – STRICT LIABILITY-FAILURE TO WARN**

101.    Plaintiff incorporates the preceding paragraphs as if set out forth herein.

102.    Plaintiff brings this Count against Defendants BAS, BD, and Bard.

103.    Defendants designed, set specifications for, manufactured, marketed, distributed, and sold the PowerPort, including the one implanted into Plaintiff into

COMPLAINT   -22-

**MALONEY O'LAUGHLIN, PLLC**
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

the stream of commerce and in the course of same, directly advertised and marketed the PowerPort to consumers or persons responsible for consumers, and therefore had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device.

104.   At the time Defendants manufactured, marketed, distributed, and sold the PowerPort device implanted into Plaintiff, Defendants were aware the device was defective and presented an unreasonably dangerous risk of injury to users of the product, including, but not limited to, the unreasonable risk  of the development of acute embolism and thrombosis of the user's internal jugular vein, when put to its intended and reasonably anticipated use, namely as an implanted port/catheter system to administer the medications, etc.

105.   Information obtained from the publicly searchable MAUDE database reflects that between August 2009 and July 2017, at least 251 adverse reports were entered into the MAUDE database, the large majority of which indicated breaks and fractures of the catheters manufactured by Defendants.

106.   The narrative of MAUDE reports from 8/3/2015, 2/3/2016, 4/28/2016, 12/12/2016 and 7/21/2017, reflect the known defective condition of the type of PowerPort surgically implanted into Plaintiff.

107.   Defendants produced and distributed the following document: "PowerPort Implantable Port Instructions For Use."

108.   The "Instructions For Use" document (at pages 1-3) includes the following sections Contraindications, Warnings, and Precautions.

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

109.   The "Instructions For Use" document (at page 3) includes thirty-three (33) Possible Complications, which in the text concerning the said Possible Complications are being qualified by Defendants as "serious complications."

110.   The "Instructions For Use" document (*see* p. -3) includes a section titled "Preventing Pinch-Off."

111.   The "Instructions For Use" document does not include any language referencing the known propensity of the catheter to erode, fracture, dislodge and create a life-threatening medical conditions, which Defendants were fully aware of.

112.   Defendants knew or should have known at the time they manufactured, marketed, distributed, and sold the PowerPort that was implanted in Plaintiff that the PowerPort devices were eroding, fracturing, and migrating for reasons other than "pinch-off" caused by the physician's incorrect initial placement of the device.

113.   Had Plaintiff's physician, been informed through the Defendant's "Instructions For Use" document that the PowerPort devices were eroding, fracturing, and migrating for reasons other than "pinch-off" caused by the physician's incorrect initial placement of the device, the said physician would have had the opportunity to evaluate the implantation of the device with full knowledge of all risks and serious potential complications and would have had the opportunity to discuss the available options with Plaintiff, including the option of avoiding the implantation of the said device to begin with.

114.   Prior to manufacturing the PowerPort device implanted into Plaintiff, Defendants knew the PowerPort devices were eroding, fracturing, and migrating

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

and causing patient injuries at much higher reported failure rates than had ever been revealed to or expected by ordinary consumers like Plaintiff in this action.

115.    Defendants knew or should have known at the time they manufactured, marketed, distributed, and sold the PowerPort device implanted in Plaintiff, that the PowerPort posed a significant and higher risk than other similar devices of failure and resulting serious injuries.

116.    Defendants failed to timely and reasonably warn of material facts regarding the safety and efficacy of the PowerPort; no reasonable health care provider, including Plaintiff's, or patient, including Plaintiff, would have used the device in the manner directed, had those facts been made known to the prescribing healthcare providers or the consumers of the device.

117.    Warnings, labels, and instructions published and disseminated by Defendants were inaccurate, intentionally misleading, misinformed and misrepresented the risks and benefits, and lack of safety and efficacy associated with the device, and failed to adequately indicate the known scope of the danger of using the device.

118.    Defendants knowingly and intentionally failed to adequately warn of the device's known or reasonably scientifically knowable dangerous propensities, and further failed to adequately provide instructions on the safe and proper use of the device.

119.    The health risks associated with the PowerPort device as described herein are of such a nature that ordinary consumers, like Plaintiff in this action, would not have readily recognized the potential harm.

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

120.   At the time Defendants manufactured, marketed, distributed, and sold the PowerPort device implanted into Plaintiff, Defendants were aware that a substantial number of PowerPort devices sold by Defendants were defective and presented a substantial danger to users of the product when put to its intended and reasonably anticipated use. Despite this knowledge, Defendants failed to provide a warning (much less an adequate warning) of the device's known or reasonably scientifically knowable dangerous propensities, and further failed to adequately provide instructions on the safe and proper use of the device.

121.   Defendants failed to timely and reasonably warn of material facts regarding the safety and efficacy of the PowerPort to medical providers and the FDA, despite having full knowledge of the failures of the PowerPort, which resulted in the device presenting an unreasonably dangerous risk of injury to patients.

122.   When the PowerPort device was implanted in Plaintiff, Defendants failed to provide adequate warnings, instructions, or labels regarding the severity and extent of health risks posed by the device, which were known to Defendants.

123.   The device, which was designed, manufactured, assembled, and sold in the stream of commerce by Defendants, was defective at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

124.   Defendants intentionally underreported the number and nature of adverse events associated with erosion, fracture, and migration of the devices to Plaintiff's health care providers, as well as the FDA.

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

125.    Due to Defendants' failure to report the known failures and medical risks associated with the PowerPort devices, which were known to Defendants for years, neither Plaintiff nor his health care providers had any reason to know of the substantial danger associated with the defective device.

126.    Had Defendants provided adequate warnings, Plaintiff and his physicians would not have used the PowerPort device.

127.    Upon information and belief, the defective and dangerous condition of the device including the one implanted into Plaintiff, existed at the time they were manufactured, marketed, labeled, distributed, and sold by Defendants to distributors and/or healthcare professionals or organizations. Upon information and belief, the device implanted in Plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed, and sold by Defendants.

128.    Defendants' lack of sufficient warnings and instructions created an unreasonably dangerous risk of injury and was the direct and proximate cause of Plaintiff's serious physical injuries; if Defendants had provided adequate warnings, Plaintiff and his physicians would not have used the device, as similar competitive devices existed at the time.

129.    Defendants' lack of sufficient warning and/or instructions was the direct and proximate cause of Plaintiff's serious physical injuries, and economic damages in an amount to be determined at trial.   Plaintiff has suffered damages due to Defendants' failure to warn.

COMPLAINT   -27-

## COUNT IV – STRICT PRODUCTS LIABILITY-DESIGN DEFECT

130.    Plaintiff incorporates the preceding paragraphs as if set out forth herein.

131.    Plaintiff brings this Count against Defendants BAS, BD, and Bard.

132.    Defendants designed, set specifications for, manufactured, marketed, distributed, and sold the PowerPort, including the one implanted in Plaintiff into the stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers, i.e., Plaintiff and his health care providers, and therefore are strictly liable for distributing a defectively designed product.

133.    The PowerPort implanted in Plaintiff was not reasonably safe for its intended use and  defective in its design and unreasonably dangerous at the time it left the control of Defendants and entered the stream of commerce; it failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable, and because the foreseeable risks of the device exceeded any benefits associated with its use.

134.    At the time PowerPort implanted in Plaintiff was manufactured, safer alternative designs were commercially, technologically, and scientifically available, attainable and feasible.

135.    At the time Defendants manufactured, marketed, distributed, and sold the PowerPort device implanted in Plaintiff, Defendants were aware the design of the device was defective and presented a substantial danger to users of the product when put to its intended and reasonably anticipated use.

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

136.    Plaintiff and his health care providers used the PowerPort in a manner that was reasonably foreseeable to Defendants and in the manner it was intended to be used.

137.    Neither Plaintiff nor his health care providers could have by the exercise of reasonable care discovered the defective condition or perceived the unreasonable dangers with the PowerPort prior to the device being implanted into Plaintiff.

138.    The PowerPort implanted in Plaintiff was not reasonably safe for its intended use and was defective as to its design.

139.    The PowerPort implanted in Plaintiff was in a defective condition when it left the possession or control of Defendants.

140.    The PowerPort was unreasonably dangerous to the user or consumer, like Plaintiff in this action.

141.    The PowerPort was expected to and did reach the consumer without substantial change in its condition.

142.    Defendants are strictly liable to the Plaintiff for designing, manufacturing, marketing, labeling, packaging, and selling the defective device implanted in Plaintiff.

143.    As a direct and proximate cause of the PowerPort's aforementioned design defects, Plaintiff was caused and/or in the future will be caused to suffer serious personal injuries, pain and suffering, sever emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, fear and anxiety concerning acute embolism and thrombosis, and other related damages.

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

## COUNT V – STRICT PRODUCTS LIABILITY-
## MANUFACTURING DEFECT

144.    Plaintiff incorporates the preceding paragraphs as if set out forth herein.

145.    Plaintiff brings this Count against Defendants BAS, BD, and Bard.

146.    Defendants designed, set specifications for, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the PowerPort, including the one implanted in Plaintiff into the stream of commerce.

147.    Upon information and belief, the defective and dangerous condition of the device implanted in Plaintiff existed at the time it was manufactured by Defendants.

148.    Upon information and belief, Defendants operated under design and manufacturing specifications for the PowerPort, which included appropriate material content, strength, size, durability appearance, resistance levels, and the devices were not to be distributed if they exhibited excessive surface damage. The manufacturing process was intended to identify any end-product products that did not meet design specifications, so that those devices would not be placed into the stream of commerce.

149.    Upon information and belief, the PowerPort implanted in Plaintiff contained manufacturing defects when it left Defendants' possession. The device differed from said Defendants' intended result and/or from other ostensibly identical units of the same product line.

150.    Upon information and belief, the PowerPort implanted in Plaintiff varied from its intended specifications in that the device did not have the specified

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

material content, strength, size, durability, strength, and contained surface damage, pitting, or cracking on the exterior of the device which increased the risk of erosion, fracture, and migration while implanted in the user's, e.g., Plaintiff's body.

151.    The device implanted in Plaintiff was in the same condition as when it was manufactured, distributed, and sold by Defendants.

152.    The PowerPort device implanted in Plaintiff, which Defendants manufactured, marketed, distributed, and sold into the stream of commerce, was defective at the time of its release into the stream of commerce.

153.    Plaintiff and his health care providers used the PowerPort in a way that was reasonably foreseeable to Defendants.

154.    The device's manufacturing defect created an unreasonable risk of injury to consumers, like Plaintiff in this action, and was the direct and proximate cause of Plaintiff's serious physical injuries and economic damages in an amount to be determined at trial.

## <u>COUNT VI – NEGLIGENT MISREPRESENTATION</u>

155.    Plaintiff incorporates the preceding paragraphs as if set out forth herein.

156.    Plaintiff brings this Count against Defendants BAS, BD, and Bard.

157.    Defendants distributed, marketed, and provided the labeling and warning materials distributed with the PowerPort device that was implanted in Plaintiff.

158.    Prior to and on the dates Defendants distributed the PowerPort to Plaintiff *via* his health care providers, Defendants negligently and carelessly

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

represented to Plaintiff, his health care providers, and the general public that certain material facts were true.

159.   The information distributed by Defendants to Plaintiff and his health care providers was in the form of reports, press releases, advertising campaigns, labeling materials, print advertisements commercial media containing material representations, and Instructions For Use.

160.   Upon information and belief, Plaintiff's prescribing physicians reviewed these materials including specifically the labeling materials provided with these devices, and Instructions For Use, prior to deciding to use the specific PowerPort device in Plaintiff.

161.   Prior to, on, and after the dates during which Plaintiff and his physicians purchased and used the PowerPort, said representations were not true, and there was no reasonable ground for Defendants believing said representations to be true at the times said representations were made.

162.   Defendants' misrepresentations to Plaintiff's health care providers were a substantial factor in their decision to use this device in Plaintiff.

163.   Defendants' misrepresentations were a substantial factor in causing Plaintiff's injuries and damages, as described herein.

## COUNT VII – FRAUDULENT CONCEALMENT

164.   Plaintiff incorporates the preceding paragraphs as if set forth herein.

165.   Plaintiff brings this Count against Defendants BAS, BD, and Bard.

166.   Defendants had a legal duty to disclose their knowledge concerning the unreasonable risks associated with the device implanted in Plaintiff, including, but not limited to the unreasonable risk of developing acute embolism and

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

thrombosis in the user's internal jugular vein. *See generally Wessa v. Watermark Paddlesports, Inc.*, Case No. C06-5156 FDB.

167.    In marketing and selling the PowerPort device, Defendants concealed material facts from Plaintiff and his health care providers.

168.    Defendants concealed material facts regarding the PowerPort including, but not limited to, the following:

      a.    That the devices were unsafe and not fit when used for their intended purpose or in a reasonably foreseeable manner;

      b.    That the devices posed dangerous health risks in excess of those associated with the use of other similar devices;

      c.    That there were additional side effects related to implantation and use of these devices that were not accurately and completely reflected in the warnings associated with the devices; and

      d.    That the devices were not adequately tested to withstand normal placement within the human body.

169.    Plaintiff and his healthcare providers were not aware of these and other facts concealed by Defendants.

170.    Defendants are and were under a continuing duty to disclose the true character, quality and nature of the device that was implanted in Plaintiff, but instead they concealed them. Defendants' conduct as described herein, amounts to conduct purposely committed, which Defendants must have realized was dangerous, heedless, and reckless, without regard to the consequences or the rights and safety of Plaintiff.

COMPLAINT   -33-

171.   In concealing these and other facts, Defendants intended to deceive Plaintiff and his health care providers as to the true facts regarding the safety and efficacy of the PowerPort.

172.   Plaintiff's healthcare providers did in fact review the product insert Defendants distributed with the PowerPort prior to prescribing the product to Plaintiff.

173.   Plaintiff's health care providers reviewed and relied on these product inserts for the purpose of making a risk benefit assessment as to whether to prescribe the PowerPort to Plaintiff. Plaintiff's health care providers also relied on these materials in determining what risk information to pass on to Plaintiff as part of the informed consent process.

174.   Plaintiff and his healthcare providers reasonably and justifiably relied on the above-described concealments by Defendants.

175.   This concealment by Defendants of material facts from Plaintiff and his healthcare providers was a substantial factor in Plaintiff's health care providers deciding to use the device and in Plaintiff's agreement to be implanted with the said device.

176.   Plaintiff's physicians would not have prescribed the PowerPort to Plaintiff had Defendants not concealed the above-described information.

177.   Defendants' fraudulent concealment was a substantial factor in causing Plaintiff's injuries and damages, as described herein.

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

## COUNT VIII – BREACH OF IMPLIED WARRANTY

178.   Plaintiff incorporates the preceding paragraphs as if set out fully herein.

179.   Plaintiff brings this Count against Defendants BAS, BD, and Bard.

180.   Defendants impliedly warranted that the PowerPort was merchantable and fit for the ordinary purposes for which it was intended.

181.   When the PowerPort was implanted in Plaintiff, it was being used for the ordinary purposes for which such device was intended.

182.   Plaintiff, as a user of the device, individually, and by and through his physicians, relied upon Defendants' implied warranties of merchantability in consenting to have the device implanted in him.

183.   Defendants breached these implied warranties of merchantability because the device implanted in Plaintiff was not merchantable or fit for the ordinary purposes for which it was used.  *See generally RCW* 62A.2-314 (c) *Implied warranty: Merchantability; usage of trade*.

184.   Defendants also breached these implied warranties because the device implanted in Plaintiff failed to conform to the promises or affirmations of fact made on the device's label or on the device's *Instructions For Use*. See generally RCW 62A. 2-314(f).

185.   Defendants' breach of the implied warranties resulted in the foreseeable implantation of the defective device in Plaintiff.

186.   The PowerPort device was purchased or otherwise acquired by Plaintiff for his personal use.

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

187.   As a direct and proximate result of Defendants' breaches of implied warranty of Merchantability, Plaintiff was caused and/or in the future will be caused to suffer serious personal injuries, pain and suffering, severe emotional distress, financial and economic loss, including, but not limited to, obligations for medical services and expenses, fear and anxiety related to the development of acute embolism and thrombosis of an internal jugular vein, and other related damages.  These damages have occurred in the past and will continue into the future.

## COUNT IX – BREACH OF EXPRESS WARRANTY

188.   Plaintiff incorporates the preceding paragraphs as if set out fully herein.

189.   Plaintiff brings this Count against Defendants BAS, BD, and Bard.

190.   Defendants expressly warranted to Plaintiff and to his health care providers that the device implanted in Plaintiff was safe and fit for use by the consumers, like Plaintiff, was of merchantable quality, did not produce unreasonably dangerous side effects, etc.

191.   Under *RCW* 7.72.030(2)(b), the device implanted in Plaintiff did not conform to the express warranty of Defendants, i.e., the manufacturers of the said device: it was made part of the basis of the bargain and related to the material facts, i.e., Defendants' presentations that the said device was safe and fit for use by consumers, like Plaintiff, was of merchantable quality, did not produce unreasonable side effects, etc., and other facts concerning the said device and the express warranty proved to be untrue.

COMPLAINT   -36-

**MALONEY O'LAUGHLIN, PLLC**
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485

192.   The device implanted in Plaintiff did not perform safely as would have been expected by an ordinary consumer, like Plaintiff, although the said device was used in an intended and foreseeable manner.

193.   Plaintiff, his health care providers, and the public reasonably relied upon Defendants' express warranties as they related to the device implanted in Plaintiff.

194.   Neither Plaintiff nor his health care providers could have discovered the breached express warranty and realized its danger to Plaintiff.

195.   As a direct and proximate result of the breach of Defendants' express warranties, Plaintiff has suffered, and will continue to suffer, serious personal injuries, pain and suffering, severe emotional distress, financial and economic loss, including, but not limited to, obligations for medical services and expenses, fear and anxiety related to the development of acute embolism and thrombosis of an internal jugular vein, and other related damages. These damages have occurred in the past and will continue into the future.

## **JURY DEMAND**

196.   Plaintiff hereby demands trial by jury on all issues.

197.   WHEREFORE, Plaintiff Donald Ray McKinley respectfully requests that the Court:

    a.   Enter Judgment against Defendants on all causes of action set forth in this Complaint; and,

    b.   Award Plaintiff compensatory damages, including for pain & suffering, emotional damages, permanent physical impairment, lost wages, loss of consortium and all other allowable damages, for

COMPLAINT   -37-                                    **MALONEY O'LAUGHLIN, PLLC**
                                                    200 WEST MERCER ST., STE. 506
                                                    SEATTLE, WA 98119
                                                    206.513.7485

1    each of his claims against Defendants, in an amount to be proven

2    at trial; and,

3    c. Award Plaintiff damages for past, present, and future medical

4    expenses, in an amount to be proven at trial; and,

5    d. Award Plaintiff pre-judgment and post-judgment interest; and,

6    e. Award Plaintiff his reasonable attorney's fees and costs incurred as

7    permitted under the applicable law of the State of Washington;

8    and,

9    f. Enter such further relief as the Court deems just and appropriate.

10    Dated this 20th day of July, 2023.

11    Respectfully submitted,

12

13    By: /s/ *Amy K. Maloney*

    Amy K. Maloney, WSBA 55610

14    /s/ *Matt J. O'Laughlin*

    Matt J. O'Laughlin, WSBA 48706

15    MALONEY O'LAUGHLIN, PLLC

16    200 W. Mercer Street, Ste. 506

    Seattle, Washington 98119

17    Tel: 206.513.7485

    Fax: 206.260.3231

18    amy@pacwestjustice.com

19    matt@pacwestjustice.com

20    Attorneys for Plaintiff

21

22

23

24

25

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER ST., STE. 506
SEATTLE, WA 98119
206.513.7485